Sonia S. Waisman, Esq., State Bar No. 153010
Email: swaisman@mwwdlaw.com
Heather L. McCloskey, Esq., State Bar No. 193239
Email: hlmccloskey@mwwdlaw.com
McCLOSKEY, WARING, WAISMAN & DRURY LLP
2401 Pacific Coast Highway, Suite 206
Hermosa Beach, CA 90254
Telephone No.: (310) 524-0400
Facsimile No.:  (310) 524-0404

Attorneys for Plaintiff
HARTFORD CASUALTY INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| HARTFORD CASUALTY INSURANCE COMPANY, | Case No. |
|---|---|
| Plaintiff, | **COMPLAINT FOR DECLARATORY RELIEF** |
| v. | |
| GRAMAR STONE CENTER, INC.; MASSACHUSETTS BAY INSURANCE COMPANY; and DOES 1 through 20, inclusive, | |
| Defendants. | |

Plaintiff HARTFORD CASUALTY INSURANCE COMPANY ("Hartford" or "Plaintiff") hereby alleges as set forth herein.

## INTRODUCTION

1. This is an action for declaratory relief, in which Hartford seeks an adjudication of its rights and obligations (if any) with respect to claims for insurance benefits in connection with the following pending underlying lawsuits: (i) *Gustavo Reyes-Gonzalez v. Aaroha Radiant Marble & Granite Slabs, et al.,* Los Angeles County Superior Court Case No. 22STCV31907 (the "*Reyes-Gonzalez* Lawsuit"), (ii) *Mynor Lopez-Gonzalez, et al., v. Alpha Tile & Stone, Inc., et al.,* Orange County

Superior Court Case No. 30-2023-01316441-CU-TT-CXC (the "*Lopez-Gonzalez* Lawsuit"), (iii) *Jaime Blanco Maciel, et al., v. Alpha Tile and Stone, Inc., et al.,* Los Angeles County Superior Court Case No. 23STCV12007 (the "*Maciel* Lawsuit"), and (iv) *Juan Rodrigo Gonzalez-Morin, et al. v. 101 Granite Countertop LLC, et al.,* Los Angeles County Superior Court Case No. 22STCV37000, including the cross-complaint filed therein by Marblex Corp. (the "*Gonzalez-Morin* Lawsuit," which includes the "*Marblex* Cross-Complaint" therein) (all, collectively, the "Underlying Lawsuits").

2. Defendant GRAMAR STONE CENTER, INC. ("Gramar Stone") is a defendant in each of the Underlying Lawsuits, and has sought defense and indemnity from Hartford for claims asserted against it in each of the Underlying Lawsuits, under certain insurance policies issued by Hartford to Gramar Stone (the "Hartford Policies," as more fully described later in this Complaint).

3. On information and belief, Defendant MASSACHUSETTS BAY INSURANCE COMPANY ("Massachusetts Bay") also issued insurance policies to Gramar Stone and seeks Hartford's participation in the defense of Gramar Stone in the Underlying Lawsuits.

## JURISDICTION

4. Jurisdiction is proper in this Court under 28 U.S.C. §1332 based on diversity of citizenship, as set forth below, because this dispute is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## PARTIES

5. Plaintiff Hartford is, and at all relevant times was, a corporation organized under the laws of the State of Indiana, with its principal place of business in Hartford, Connecticut, and is, and at all relevant times was, authorized to transact business within the State of California.

///

6. Defendant Gramar Stone is a California corporation with its principal place of business in Anaheim, California.

7. Defendant Massachusetts Bay is, and at all relevant times was, a corporation organized under the laws of the State of Florida, with its principal place of business in Worcester, Massachusetts, and is, and at all relevant times was, authorized to transact business within the State of California.

8. The true names and capacities of Defendants DOES 1 through 20, inclusive, are presently unknown to Hartford and, therefore, Hartford sues said Defendants by such fictitious names. Based on information and belief, each such Defendant is either a person or entity that engaged in some of the acts and omissions alleged herein and/or is otherwise liable jointly and severally with all other Defendants herein or is an insurance company that may have issued insurance policies under which Defendants may assert claims relating to the Underlying Lawsuits. Hartford will amend this Complaint to state the true names and capacities of the fictitiously named Defendants once they are ascertained.

## VENUE

9. Venue is proper in the Central District of California, pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events that are the subject matter of this action and the Underlying Lawsuits occurred within the Central District.

## NATURE OF THE ACTION

10. This is a civil action for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201.

11. This action is brought to determine the respective rights and obligations of Hartford under the Hartford Policies, with respect to claims for insurance benefits, including defense and indemnity, in connection with the Underlying Lawsuits.

///

12. As described in more detail below, Hartford is informed and believes, and thereupon alleges, that the claims against Gramar Stone in the Underlying Lawsuits allege solely injuries that arise out of or are related to, in whole or in part, exposure to, inhalation of or contact with silica or silica containing materials, and, as such, these claims fall squarely with the Silica Exclusions in each of the Hartford Policies.

13. Defendant Gramar Stone asserts that Hartford has a duty to defend and indemnify Gramar Stone in the Underlying Lawsuits; and Defendant Massachusetts Bay seeks Hartford's participation in Gramar Stone's defense in the Underlying Lawsuits.

14. Contrary to Defendants' contentions: (1) the Silica Exclusions in each of the Hartford Policies applies to preclude coverage and any potential for coverage under the Hartford Policies and, therefore, negates any duty to defend or indemnify Gramar Stone in the Underlying Lawsuits, and (2) other policy terms, conditions, exclusions and limitations, also apply to negate any duty indemnify Gramar Stone in the Underlying Lawsuits. For example, without limitation, the claims against Gramar Stone in the Underlying Lawsuits fall outside the scope of coverage under the Hartford Policies and further are excluded from coverage by various exclusions, including, but not limited to, the Expected Or Intended Injury Exclusion and the Pollution Exclusion.

15. Accordingly, an actual and justiciable controversy exists concerning the respective rights and obligations of Hartford and Gramar Stone as to the Underlying Lawsuits.

## GENERAL ALLEGATIONS

### A. The Underlying Lawsuits

#### *The Reyes-Gonzalez Lawsuit*

16. On or about September 29, 2022, the *Reyes-Gonzalez* Action was filed in Los Angeles County Superior Court, naming nearly 50 alleged manufacturers,

distributors and/or suppliers of materials used for countertops, including, but not limited to, granite, marble, quartz, onyx, porcelain, natural stone, and artificial stone containing, all allegedly containing silica.  Gramar Stone is among the numerous defendants named in that lawsuit.

17. The *Reyes-Gonzalez* complaint alleges that, from about 2007 to 2022, Gustavo Reyes-Gonzalez worked in Southern California, cutting, fabricating and installing granite, marble, other natural stone and artificial stone counters, mostly in homes, and that he developed silicosis that was caused or contributed to by this work.

18. Specifically, Gustavo Reyes-Gonzalez alleges he was "exposed to and inhaled toxicologically significant amounts of silica and metals" that were "within said products manufactured, distributed and/or supplied" by the defendants in that case, including Gramar Stone, and that he developed "silicosis and other related and consequential injuries" as a result.

19. The *Reyes-Gonzalez* complaint includes a section captioned "State of the Art," three pages long and containing 24 paragraphs, with allegations regarding the history of knowledge regarding silicosis and the dangers of injury from silica and silica dust.

20. The *Reyes-Gonzalez* complaint asserts causes of action for (1) negligence, (2) strict liability – failure to warn, (3) strict liability – design defect, and (4) fraudulent concealment.  The complaint seeks compensation for general damages; medical and incidental expenses; loss of earnings; increased risk of death and fear of such increased risk; diminished quality and enjoyment of life; loss of years of life; pre- and post-judgment interest; punitive damages; and costs of suit.

21. Initially, when Gramar Stone tendered the *Reyes-Gonzalez* Action to Hartford seeking defense and indemnity under the Hartford Policies, Hartford agreed to provide a defense, subject to a full and complete reservation of rights.  Subsequently, however, upon further investigation of the allegations in the *Reyes-Gonzales* Lawsuit as well as further consideration of the Hartford Policies, Hartford

determined that the Silica Exclusions negate coverage and any potential for coverage for the *Reyes-Gonzalez* Lawsuit, and Hartford withdrew from the defense and also reserved its rights as to the application of other policy terms, conditions, exclusions and limitations.

### **The Lopez-Gonzalez Lawsuit**

22. On or about March 28, 2023, the *Lopez-Gonzalez* Lawsuit was filed in Orange County Superior Court, naming nearly 50 alleged manufacturers, distributors and/or suppliers of "all mineral products that contained crystalline silica," and included artificial stone products (including agglomerate, agglomerated stone, conglomerate, engineered stone, manufactured stone, quartz, reconstituted stone and synthetic stone) and natural stone products (including granite, limestone, marble, onyx, porcelain, quartzite, sandstone, serpentine and travertine). Gramar Stone is among the numerous defendants named in that lawsuit.

23. The *Lopez-Gonzalez* Lawsuit alleges that Gramar Stone exposed plaintiff Mynor Lopez-Gonzalez to silica through the use of Caesarstone, Compac, Dekton, dolomite, granite, LG Viatera, limestone, natural stone, onyx, quartz, Silestone, and other stone products.

24. The *Lopez-Gonzalez* Lawsuit alleges that, from about 2004 to 2022, Mynor Lopez-Gonzalez worked in Orange County and Los Angeles County, fabricating and installing artificial and natural stone countertops in commercial and residential locations from which he was exposed to and inhaled respirable crystalline silica and that he developed "silicosis, as well as other related and consequential injuries" as a result.

25. The *Lopez-Gonzalez* complaint includes sections captioned "Brief History of Silicosis" and "New Artificial Stone Silicosis Epidemic," spanning approximately 8 pages and including 36 paragraphs, with allegations regarding the history of knowledge regarding silicosis and the dangers of injury from silica and silica dust. Within a section more than 80 pages long (including more than 215

paragraphs) relating to the "Artificial Stone Defendants" and their knowledge of silicosis and the dangers of injury from silica and silica materials in their products, the *Lopez-Gonzalez* complaint includes 17 pages (more than 50 paragraphs) related to named defendant Caesarstone USA, Inc. and the known dangers of silica materials in its Caesarstone product (allegedly used by Gramar Stone) and another section related to named defendant Cosentino Group and the known dangers of silica materials in its Silestone and Dektron products (both of which the complaint alleges were and/or are used by Gramar Stone).

26. The *Lopez-Gonzalez* complaint asserts causes of action for (1) negligence, (2) strict liability – failure to warn, (3) strict liability – design defect, (4) fraudulent concealment, and (5) breach of implied warranties; as well as a loss of consortium cause of action brought by plaintiff Ruby Noret-Lopez.

27. The negligence cause of action alleges failure to warn and failure to provide adequate instructions "so as to prevent [Mynor Lopez-Gonzalez] from developing and suffering from silicosis." It further alleges that exposure to the defendants' stone products has caused him to suffer "silicosis and related medical conditions"; and that as a direct and proximate result of defendants' negligence, as alleged, he "suffers from silicosis and related injuries." Similarly, the strict liability causes of action allege that as a result of plaintiff Mynor's exposure to defendants' stone products, he "suffers from a specific illnesses [*sic*], to wit, silicosis as well as other related and consequential injuries."

28. The complaint seeks compensation for past, present and future general damages, medical and incidental expenses, and loss of earnings, as well as punitive damages, damages for loss of consortium, and costs of suit.

29. Gramar Stone tendered the *Lopez-Gonzalez* Lawsuit to Hartford seeking defense and indemnity under the Hartford Policies. Hartford declined the tender, denying a duty to defend or indemnify Gramar Stone, having determined that the Silica Exclusions negate coverage and any potential for coverage for the *Lopez-*

*Gonzalez* Lawsuit, and also reserved its rights as to the application of other policy terms, conditions, exclusions and limitations.

### ***The Maciel Lawsuit***

30. On or about May 25, 2023, the *Maciel* Lawsuit was filed in Los Angeles County Superior Court, naming nearly 50 alleged manufacturers, distributors and/or suppliers of "all mineral products that contained crystalline silica," and included artificial stone products (including agglomerate, agglomerated stone, conglomerate, engineered stone, manufactured stone, quartz, reconstituted stone and synthetic stone) and natural stone products (including granite, limestone, marble, onyx, porcelain, quartzite, sandstone, serpentine and travertine). Gramar Stone is among the numerous defendants named in that lawsuit.

31. The *Maciel* Lawsuit alleges that Gramar Stone exposed plaintiff Jaime Blanco Maciel to silica through the use of Caesarstone, dolomite, granite, limestone, marble, onyx, porcelain, quartz, quartzite, sandstone, serpentine, Silestone, travertine, and other stone products.

32. The *Maciel* Lawsuit alleges that, from about 2003 to 2022, Jaime Blanco Maciel worked in Los Angeles County, fabricating, cutting, polishing, and installing stone countertops, from which he was exposed to and inhaled respirable crystalline silica and that he developed "silicosis, as well as other related and consequential injuries" as a result.

33. Like the *Lopez-Gonzalez* complaint, the *Maciel* complaint includes sections captioned "Brief History of Silicosis" and "New Artificial Stone Silicosis Epidemic," spanning approximately 8 pages and including 36 paragraphs, with allegations regarding the history of knowledge regarding silicosis and the dangers of injury from silica and silica dust. Within a section more than 80 pages long (including more than 215 paragraphs) relating to the "Artificial Stone Defendants" and their knowledge of silicosis and the dangers of injury from silica and silica materials in their products, the *Maciel* complaint includes 17 pages (more than 50

1  paragraphs) related to named defendant Caesarstone USA, Inc. and the known
2  dangers of silica materials in its Caesarstone product (allegedly used by Gramar
3  Stone) and another section related to named defendant Cosentino Group and the
4  known dangers of silica materials in its Silestone product (which the complaint
5  alleges was and/or is used by Gramar Stone).

6       34.    The *Maciel* complaint asserts causes of action for (1) negligence,
7  (2) strict liability – failure to warn, (3) strict liability – design defect, (4) fraudulent
8  concealment, and (5) breach of implied warranties; as well as a loss of consortium
9  cause of action brought by plaintiff Helen Ortiz-Blanco.

10       35.    The negligence cause of action alleges failure to warn and failure to
11  provide adequate instructions "so as to prevent [Jaime Blanco Maciel] from
12  developing and suffering from silicosis."  It further alleges that exposure to the
13  defendants' stone products has caused him to suffer "silicosis and related medical
14  conditions"; and that as a direct and proximate result of defendants' negligence, as
15  alleged, he "suffers from silicosis and related injuries."  Similarly, the strict liability
16  causes of action allege that as a result of plaintiff Maciel's exposure to defendants'
17  stone products, he "suffers from specific illnesses, to wit, silicosis as well as other
18  related and consequential injuries."

19       36.    The *Maciel* complaint seeks compensation for past, present and future
20  general damages, medical and incidental expenses, and loss of earnings, as well as
21  punitive damages, damages for loss of consortium, and costs of suit.

22       37.    Gramar Stone tendered the *Maciel* Lawsuit to Hartford seeking defense
23  and indemnity under the Hartford Policies.  Hartford declined the tender, denying a
24  duty to defend or indemnify Gramar Stone, having determined that the Silica
25  Exclusions negate coverage and any potential for coverage for the *Maciel* Lawsuit,
26  and also reserved its rights as to the application of other policy terms, conditions,
27  exclusions and limitations.
28  ///

### *The Gonzalez-Morin Lawsuit*

38. On or about May 22, 2023, the First Amended Complaint in the *Gonzalez-Morin* Lawsuit was filed in Los Angeles County Superior Court, against more than 65 defendants, alleging that deceased plaintiff Juan Rodrigo Gonzalez-Morin was "exposed by inhaling dust from cutting, grinding, installing and finishing defendants' products," which "were all mineral products that contained crystalline silica." An "additional parties" attachment to the First Amended Complaint names Gramar Stone among the numerous defendants, as alleged "supplier and/or manufacturer of the following product(s): Caesarstone; Compac; Dekton; Granite; LG Viatera; Limestone; Natural Stone; Onyx; Quartz; Silestone; And other stone products to be identified during the course of discovery."

39. The *Gonalez-Morin* Lawsuit alleges that the decedent was "exposed to crystalline silica" in such products during the course of his work from about 2003 to 2021, and that, as a result he allegedly suffered from silicosis "and other related and consequential medical conditions" from which he died on April 9, 2023.

40. Like the *Lopez-Gonzalez* and *Maciel* complaints, the First Amended Complaint in *Gonzalez-Morin* includes sections captioned "Brief History of Silicosis" and "New Artificial Stone Silicosis Epidemic," spanning approximately 8 pages and including 36 paragraphs, with allegations regarding the history of knowledge regarding silicosis and the dangers of injury from silica and silica dust. Within a section more approximately 135 pages long (including nearly 300 paragraphs) relating to the "Artificial Stone Defendants" and their knowledge of silicosis and the dangers of injury from silica and silica materials in their products, the First Amended Complaint in the *Gonzalez-Morin* Lawsuit includes 54 pages (more than 100 paragraphs) related to named defendant Caesarstone USA, Inc. and the known dangers of silica materials in its Caesarstone product (allegedly used by Gramar Stone) and another section (28 pages; 42 paragraphs) related to named defendant Cosentino Group and the known dangers of silica materials in its

Silestone product (which, along with Cosentino Group's Dekton product, the "additional parties" attachment to the First Amended Complaint alleges was and/or is supplied and/or manufactured by Gramar Stone).

41. The First Amended Complaint in the *Gonzalez-Morin* Lawsuit asserts causes of action for (1) negligence, (2) strict liability – failure to warn, (3) strict liability – design defect, (4) fraudulent concealment, and (5) breach of implied warranties; as well as a loss of consortium cause of action brought by plaintiff Helen Ortiz-Blanco.

42. The negligence cause of action alleges failure to warn and failure to provide adequate instructions "so as to prevent [decedent Juan Rodrigo Gonzalez-Morin] from developing and suffering from silicosis and death." It further alleges that exposure to the defendants' stone products "was a substantial factor in causing, prolonging, and aggravating his silicosis and his consequential injuries from which he died"; and that as a direct and proximate result of defendants' negligence, as alleged, he "suffered from silicosis and related injuries, from which he died. . . ." Similarly, the strict liability cause of action for failure to warn alleges that defendants' products "lacked adequate instructions for handling and use to prevent respirable crystalline silica exposure to [the decedent plaintiff], and to prevent silicosis, thereby causing Decedent's silicosis and his untimely death."

43. The First Amended Complaint in the *Gonzalez-Morin* Lawsuit seeks damages including compensation for past, present and future general damages, medical and incidental expenses, loss of earnings, funeral and burial expenses, as well as punitive damages and damages for loss of consortium (and related damages sought by his family); as well as pre- and post-judgment interest and costs of suit.

44. Gramar Stone tendered the *Gonzalez-Morin* Lawsuit to Hartford seeking defense and indemnity under the Hartford Policies. Hartford declined the tender, denying a duty to defend or indemnify Gramar Stone, having determined that the Silica Exclusions negate coverage and any potential for coverage for the

*Gonzalez-Morin* Lawsuit, and also reserved its rights as to the application of other policy terms, conditions, exclusions and limitations.

### B. The Insurance Policies

#### *The Hartford Policies*

45. Hartford issued the Hartford Policies to Gramar Stone as policy number 72SBANU5188, for consecutive annual policy periods from May 26, 2006 through May 26, 2011.

*Primary Business Liability Coverage in the Hartford Policies*

46. Each of the Hartford Policies includes Business Liability Coverage (subject to all of the policy terms, conditions, exclusions and limitations) pursuant to an insuring agreement that provides, in relevant part:

**Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply.

\* \* \*

**b.** This insurance applies:
   **(1)** To "bodily injury" and "property damage" only if:
      **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" . . .;
      **(b)** The "bodily injury" or "property damage" occurs during the policy period; and
      **(c)** Prior to the policy period, no insured . . . knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

\* \* \*

///

///

///

47. The Business Liasbility Coverage in each of the Hartford Policies defines "occurrence" to mean "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

48. Each of the Hartford Policies contains a Silica Exclusion endorsement, applicable to the Business Liability Coverage, which provides:

> A. The following exclusion is added [to the Business Liability Coverage Form]:
>
> This insurance does not apply to:
>
> **Silica**
>
> Any injury, damage, loss, cost or expense, including but not limited to "bodily injury", "property damage" or "personal and advertising injury" arising out of, or relating to, in whole or in part, the "silica hazard".
>
> B. "Silica hazard" means an exposure to, inhalation of or contact with, or threat of exposure to, inhalation of or contact with, the actual or alleged properties of silica or any silica containing materials and includes the mere presence of silica or any silica containing materials in any form.
>
> Silica includes all forms of the compound silicon dioxide, including but not limited to quartz.

49. The Hartford Policies also contain the following exclusion applicable to the Business Liability Coverage:

> a. **Expected Or Intended Injury.**
>
> (1) [This insurance does not apply to] "Bodily injury or property damage" expected or intended from the standpoint of the insured.

\* \* \*

///

///

50. The Business Liability Coverage in each of the Hartford Policies is subject to other terms, conditions, exclusions and limitations, including a Pollution Exclusion, which precludes coverage for injury arising out of the actual, alleged or threated release of "pollutants" (as defined in the Business Liability Coverage portion of the Hartford Policies to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste"), under the circumstances set forth therein, which may also apply to limit or negate coverage for the Underlying Lawsuits such that Hartford has no duty to indemnify Gramar Stone on these additional bases.

<u>*Umbrella Liability Coverage in the Hartford Policies*</u>

51. Subject to the terms, conditions, and exclusions therein, the Hartford Policies in effect from May 26, 2007 through May 26, 2011 also include Umbrella Liability Coverage (subject to all of the policy terms, conditions, limitations and exclusions) subject to an insuring agreement that provides, in relevant part:

> **Insuring Agreements**
>
> **A.   Umbrella Liability Insurance**
>
> **1.**  We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance" or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury" . . . to which this insurance applies caused by an "occurrence". . . .
>
> * * *
>
> **2.**  This insurance applies:
>    **(2)**  To "bodily injury" [or] "property damage" . . . only if:
>       **(a)**  The "bodily injury" or "property damage" . . . occurs during the policy period; and
>       **(b)**  Prior to the "policy period", no "insured" . . . knew that the "bodily injury" or "property damage" had occurred, in whole or in part. . . .
>
> * * *

///

///

52. The Umbrella Liability Coverage defines "occurrence," with respect to "bodily injury," to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

53. The Umbrella Liability Coverage is subject to a Silica Exclusion endorsement, which provides:

> A. The following exclusion is added [to the Umbrella Liability Coverage Provisions]:
>
> This insurance does not apply to:
>
> **Silica**
>
> Any injury, damage, loss, cost or expense, including but not limited to "bodily injury", "property damage" or "personal and advertising injury" arising out of, or relating to, in whole or in part, the "silica hazard".
>
> B. The following is added to the **Definitions** Section:
>
> "Silica hazard" means an exposure to, inhalation of or contact with, or threat of exposure to, inhalation of or contact with, the actual or alleged properties of silica or any silica containing materials and includes the mere presence of silica or any silica containing materials in any form.
>
> Silica includes all forms of the compound silicon dioxide, including but not limited to quartz.

54. The Umbrella Liability Coverage also contains the following exclusion:

> **14. Expected Or Intended**
>
> [This insurance does not apply to] "Bodily injury or property damage" expected or intended from the standpoint of the "insured".

55. The Umbrella Liability Coverage is subject to other terms, conditions, exclusions and limitations, including a Pollution Exclusion, which precludes coverage for any alleged "actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for

the pollution hazard" (as defined in the Umbrella Liability Pollution Exclusion), as further set forth therein, which may also apply to limit or negate coverage for the Underlying Lawsuits such that Hartford has no duty to indemnify Gramar Stone under the Umbrella Liability Coverage on these additional bases.

### The Massachusetts Bay Policies

56. On information and belief, Massachusetts Bay issued liability insurance policies to Gramar Stone during the period from May 26, 2013 through May 26, 2022.

### FIRST CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT – Against All Defendants)

### (*No Duty To Defend The Underlying Lawsuits Based On The Silica Exclusions*)

57. Hartford realleges and incorporates the allegations set forth in each of the preceding paragraphs, as though fully set forth herein.

58. The Hartford Policies each include Silica Exclusions that apply to preclude coverage for any injury "arising out of, or relating to, in whole or in part, . . . an exposure to, inhalation of or contact with . . . the actual or alleged properties of silica or any containing materials and includes the mere presence of silica or any silica containing materials in any form," including "all forms of the compound silicon dioxide, including but not limited to quartz."

59. Hartford contends that the Silica Exclusions in each of the Hartford Policies negate any potential for coverage and corresponding duty to defend Gramar Stone in the Underlying Lawsuits because the Underlying Lawsuits each allege the plaintiff therein has suffered silicosis and related injuries as a result of exposure to and inhalation of silica and silica materials in the stone products of the named defendants, including Gramar Stone – allegations which fall squarely within the Silica Exclusions – and the complaints in the Underlying Lawsuits are devoid of facts or allegations relating to any injury other than silicosis and injuries and medical conditions related to silicosis or as a consequence thereof. On information and belief, Defendants dispute Hartford's position.

60. An actual and justiciable controversy exists between Hartford and the Defendants as to whether the Silica Exclusions in the Hartford Policies negate a duty to defend Gramar Stone in the Underlying Lawsuits.

61. Hartford seeks a judicial determination and declaration as to the parties' respective rights and obligations under the Hartford Policies. In particular, Hartford seeks a judicial declaration that Hartford has no duty to defend Gramar Stone in the Underlying Lawsuits, based on the Silica Exclusions in the Hartford Policies.

62. Such judicial declaration is necessary and appropriate at this time for Hartford to ascertain its obligations, if any, under the Hartford Policies.

**SECOND CLAIM FOR RELIEF**

**(DECLARATORY JUDGMENT – Against All Defendants)**

**(*No Duty To Indemnify The Underlying Lawsuits***

***Based On The Silica Exclusions*)**

63. Hartford realleges and incorporates the allegations set forth in each of the preceding paragraphs, as though fully set forth herein.

64. Hartford contends that the Silica Exclusions in each of the Hartford Policies apply to negate coverage and, therefore, Hartford has no obligation to indemnify Gramar Stone in the Underlying Lawsuits. On information and belief, Defendants dispute Hartford's position.

65. An actual and justiciable controversy exists between Hartford and Defendants as to whether the Silica Exclusions in the Hartford Policies negate a duty to indemnify Gramar Stone in the Underlying Lawsuits.

66. Hartford seeks a judicial determination and declaration as to the parties' respective rights and obligations under the Hartford Policies. In particular, Hartford seeks a judicial declaration that Hartford has no duty to indemnify Gramar Stone in the Underlying Lawsuits, based on the Silica Exclusions in the Hartford Policies.

///

67. Such judicial declaration is necessary and appropriate at this time for Hartford to ascertain its obligations, if any, under the Hartford Policies.

### THIRD CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT – Against All Defendants)

### (*No Duty To Indemnify The Underlying Lawsuits –*

### *Based On Other Policy Terms, Conditions, Exclusions and Limitations*)

68. Hartford realleges and incorporates the allegations set forth in each of the preceding paragraphs, as though fully set forth herein.

69. In addition to the Silica Exclusions, the Hartford Policies each include policy terms, conditions, exclusions and limitations, including, but not limited to, the following: (i) that the claim fall within the scope of coverage, i.e., that "bodily injury" occur during the policy period and be caused by an "occurrence" as defined in the Hartford Policies, and that the injury not be known to the insured prior to the policy period; (ii) policy exclusions, including the Expected Or Intended Injury Exclusion and the Pollution Exclusion; and (iii) California Insurance Code section 533, which prohibits insurance coverage for the insured's wilful acts, and which is an implied exclusionary clause statutorily read into all insurance policies.

70. Hartford contends that such other policy terms, conditions, exclusions and limitations in the Hartford Policies, including those identified above, apply to negate coverage and, therefore, Hartford has no obligation to indemnify Gramar Stone in the Underlying Lawsuits on those bases. On information and belief, Defendants dispute Hartford's position.

71. Hartford seeks a judicial determination and declaration as to the parties' respective rights and obligations under the Hartford Policies. In particular, Hartford seeks a judicial declaration that Hartford has no duty to indemnify Gramar Stone in the Underlying Lawsuits, based upon policy terms, conditions, exclusions and limitations in the Hartford Policies, other than the Silica Exclusions, including (i) that the claims against Gramar Stone in the Underlying Lawsuits do not fall

within the scope of coverage, i.e., that the Underlying Lawsuits do not seek damages because of "bodily injury" that occurred during the policy period and was caused by an "occurrence" as defined in the Hartford Policies; (ii) that various policy exclusions, including the Expected Or Intended Injury Exclusion and/or the Pollution Exclusion apply; and (iii) that California Insurance Code section 533 (which prohibits insurance coverage for the insured's willful acts, and which is an implied exclusionary clause statutorily read into all insurance policies) applies to negate coverage.

72. Such judicial declaration is necessary and appropriate at this time for Hartford to ascertain its obligations, if any, under the Hartford Policies.

73. Such judicial declaration is necessary and appropriate at this time for Plaintiff to ascertain its obligations, if any, owed under the Policies.

## PRAYER FOR RELIEF

WHEREFORE, Hartford prays for judgment as follows:

1. On the First Claim for Relief, Hartford seeks a judicial declaration that it has no duty to defend Gramar Stone in the Underlying Lawsuits because the Silica Exclusions in the Hartford Policies apply to negate any potential for coverage and, therefore, negate a duty to defend;

2. On the Second Claim for Relief, Hartford seeks a judicial declaration that it has no duty to indemnify Gramar Stone in the Underlying Lawsuits because the Silica Exclusions in the Hartford Policies apply to negate coverage and, therefore, negate a duty to indemnify;

3. On the Third Claim for Relief, Hartford seeks a judicial declaration that it has no duty to indemnify Gramar Stone in the Underlying Lawsuits because policy terms, conditions, exclusions and limitations in the Hartford Policies, other than the Silica Exclusions, apply to negate coverage and, therefore, negate a duty to indemnify;

///

4. Ordering that Hartford be awarded its costs of suit; and

5. Such other and further relief as the Court deems just and proper.

Dated: December 18, 2023

McCLOSKEY, WARING, WAISMAN & DRURY LLP

By: __/s/ Heather L. McCloskey__
Sonia S. Waisman
Heather L. McCloskey
Attorneys for Plaintiff
HARTFORD CASUALTY INSURANCE COMPANY